United States District Court
Southern District of Texas
**ENTERED**
September 30, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| STEVEN MAYFIELD, *individually and on behalf of a class of similarly situated persons*, | § | |
| Plaintiff. | § | |
| VS. | § | CIVIL ACTION NO. 4:20-cv-01966 |
| LTD FINANCIAL SERVICES, L.P., | § | |
| Defendant. | § | |

## OPINION AND ORDER

Before me is a motion to dismiss filed by LTD Financial Services, L.P. ("LTD"). *See* Dkt. 17. After carefully reviewing the parties' arguments and applicable law, and for the reasons discussed below, LTD's motion to dismiss is **DENIED**.

## BACKGROUND AND PROCEDURAL HISTORY

This case arises from LTD's attempt to collect a debt owed by the plaintiff, Steven Mayfield ("Mayfield"). The well-pleaded facts in Mayfield's amended complaint are accepted as true for purposes of LTD's motion to dismiss. *See Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir 2019).

Mayfield signed up for a credit card from First Savings Bank d/b/a First Savings Credit Card ("First Savings"). He used the credit card to purchase personal goods, household items, gasoline, medical-related expenses, and a vacation. Due to personal financial difficulties, Mayfield was unable to keep up with his monthly payments.

LTD, acting as a debt collector, sent Mayfield a two-page debt-collection letter on June 3, 2019, the relevant portion of which is reprinted below:

******************* SETTLEMENT IN FULL OFFER ******************

This letter is from LTD Financial Services, L.P., a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose. Acceptance of this settlement offer, selecting a repayment option and payment by the due date will settle this debt in full with the current creditor.

| PAYMENT PLAN 1 | PAYMENT PLAN 2 |
|---|---|
| Make 1 payment of $402.54 due 06/28/2019. | Make 6 payments of $80.51 with the first payment due 06/28/2019. Successive payments are due the 28th of each month. |
| **YOU SAVE: $402.54** | **YOU SAVE: $322.02** |

We are not obligated to renew this offer.

You may call this office to discuss this debt at 1-877-754-0013, ask for AYO SANYA. Please refer to the reference number above.



Visit https://payments.ltdfin.com to pay online.

**NOTICE: SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

Tear along dotted line

39947 / 000019974 / 0000(
66420281

3200 Wilcrest Suite 600
Houston, TX 77042-6000

LTD REF NO: [redacted]
CREDITOR ACCOUNT #: [redacted]

BALANCE: $805.08

Dkt. 17-1 at 1.

Mayfield did not make any payments or contact LTD to discuss the proposed payment plans. However, Mayfield does claim that he "attempted to adjust his finances to satisfy one of the discounted Payment Plan Options, but was unable to do so by the identified deadline." Dkt. 14 at 6. Mayfield further alleges that he "reasonably assumed" that the identified due date was his deadline "to accept either of the Payment Plan Option[s]." *Id.* at 4.

On June 3, 2020, Mayfield sued LTD for multiple alleged violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1962 *et seq*. Mayfield has since amended his complaint. In his live pleadings, Mayfield alleges that he "was harmed in a particularized and concrete manner by the wording of the Subject Letter because [he was] *willing* to attempt to pay down the Subject Debt but he was *unable to satisfy* either of the discounted Payment Plan Options *by the stated due dates*." Dkt. 14 at 5. This inability to satisfy either of the payment plans, Mayfield contends, caused him to "suffer unnecessary stress and anxiety, all of

which constituted a concrete and particularized injury prohibited by the FDCPA." *Id*. Although Mayfield does not claim that he, himself, was confused by the letter's offer to settle his debt "in full with the current creditor," he argues that such an offer violates the FDCPA "because a settlement for less than the full value of the Subject Debt could result in a subsequent sale of the debt to a debt purchaser where the debt purchaser could plausibly have demanded payment for the remaining amount of the Subject Debt." *Id.* at 7. Finally, Mayfield claims that he was "confused by the manner in which [LTD] reasonably implied that the Subject Debt would be credit reported if he accepted one of the settlement offers, where upon information and belief, the debt was being credit reported at the time the Collection Letter was mailed." *Id.* at 6.

LTD has moved to dismiss Mayfield's claims on two grounds. *See* Dkt. 17. First, LTD contends that Mayfield lacks standing because he does not allege that he suffered a concrete and particularized injury.[1] Second, LTD argues that even if Mayfield could clear the standing hurdle, he has failed to state a claim under the FDCPA.

## DISCUSSION

### A. MAYFIELD HAS SATISFIED THE REQUIREMENTS OF ARTICLE III STANDING

#### 1. Legal Standard

Federal Rule of Civil Procedure 12(b)(1) provides that a case should be dismissed if the court does not possess subject matter jurisdiction. Subject matter jurisdiction fails if the plaintiff lacks Article III standing. *See Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541–42 (1986). Therefore, when a

---

[1] LTD addresses Article III standing through the lens of Rule 12(b)(6). However, constitutional standing is analyzed under Rule 12(b)(1). *See Harold H. Huggins Realty, Inc. v. FNC, Inc.*, 634 F.3d 787, 795 n.2 (5th Cir. 2011) ("dismissal for lack of constitutional standing . . . should be granted under Rule 12(b)(1)"). "Although [LTD] mistakenly moves to dismiss for lack of constitutional standing under Rule 12(b)(6), I will consider the request as if it were made under Rule 12(b)(1)." *Shields v. Dick*, No. 3:20-CV-00018, 2020 WL 5522991, at *3 (S.D. Tex. July 9, 2020).

plaintiff lacks standing to sue in federal court, it is appropriate to dismiss the action pursuant to Rule 12(b)(1) for want of subject matter jurisdiction. *See FNC, Inc.*, 634 F.3d at 795 n.2.

Standing presents a "threshold jurisdictional question" in any suit filed in federal district court. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998). The requirement that a party have standing to bring suit flows from Article III of the Constitution, which limits the scope of federal judicial power to the adjudication of "cases" or "controversies." U.S. CONST. art. III, § 2. To establish standing, a plaintiff must show that: (1) she suffered an "injury in fact"; (2) the injury is "fairly traceable" to the challenged conduct; and (3) the injury is "likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). As the party invoking federal jurisdiction, the plaintiff bears the burden on each of these elements. *Id.*

An "injury in fact" is an invasion of a legally protected interest that is concrete, particularized, and actual or imminent. *See id.* at 1548. A "particular" injury is one that affects the plaintiff in a personal and individual way, while an injury satisfies the "concrete" requirement if it "actually exist[s]"—that is, the injury cannot be hypothetical or conjectural. *Id.* at 1548. *See also Buchholz v. Meyer Njus Tanick, PA*, 946 F3d 855, 861 (6th Cir. 2020) ("A concrete injury is, like it sounds, real and not abstract." (quotation omitted)). "This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." *Spokeo*, 136 S. Ct. at 1549. As the Supreme Court has explained, "although tangible injuries are perhaps easier to recognize, . . . intangible injuries can nevertheless be concrete." *Id.* at 1549. To that end, Congress, through its legislative power, may "identify intangible harms that meet minimum Article III requirements" and, in doing so, "define injuries . . . that will give rise to a case or controversy where none existed before." *Id.* (quotation omitted).

For an injury to be "actual or imminent," the plaintiff must allege either that she has suffered a legally recognized injury or there is an impending danger or

substantial risk that she will suffer such an injury. *See Summers v. Earth Island Inst.*, 555 US 488, 496 (2009). Allegations of "possible future injury" are insufficient. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up).

**2. Analysis**

Only the first element to establish Article III standing is at issue between the parties. LTD contends that Mayfield does not allege that he suffered a concrete and particularized injury. In his scattershot response, Mayfield alleges that he suffered a cognizable injury—emotional distress, which manifested itself in two ways. Globally, Mayfield argues that being subjected to false or misleading debt-collection communications can result in mental or emotional distress. More specifically, Mayfield contends that he suffered "emotional distress over being unable to take advantage of time-sensitive discounted settlement offers." Dkt. 22 at 17. *See also id.* at 14 ("[LTD's] time-sensitive offer harmed him where he was not able to assemble the necessary funds to pay either of the discounted offers by the time limits imposed by the offers."). LTD rejects this contention, arguing that Mayfield has not alleged a cognizable injury because he admits that he was unable to accept the settlement options and does not claim that he would have been able to do so had the letter not contained an acceptance deadline. I am persuaded by Mayfield's argument.

The Supreme Court has not addressed the issue of Article III standing under the FDCPA. But its most recent statement on Article III's concrete-injury requirement dealt with analogous concepts under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*. *See Spokeo*, 136 S. Ct 1540. There, the Supreme Court held that the violation of a procedural right granted by statute can, in some circumstances, be sufficiently concrete (even if intangible) to establish the requisite injury in fact. *Id.* at 1549. *See also id.* ("Congress may elevate to the status of legally cognizable injuries concrete, de facto injuries that were previously inadequate in law." (cleaned up)). "[A] plaintiff in such a case need not allege any additional harm beyond the one Congress has identified." *Id.* (emphasis omitted).

But, as the Supreme Court recently reiterated, Article III standing requires a concrete injury even in the context of a statutory violation:

> Congress's creation of a statutory prohibition or obligation and a cause of action does not relieve courts of their responsibility to independently decide whether a plaintiff has suffered a concrete harm under Article III any more than, for example, Congress's enactment of a law regulating speech relieves courts of their responsibility to independently decide whether the law violates the First Amendment.

*TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021).

Since *Spokeo*, the Fifth Circuit has twice considered Article III standing in the context of an FDCPA claim; however, it has not directly addressed whether a consumer bringing such a claim must establish actual damages to assert standing or recover damages.

In its most recent decision,[2] *Flecha v. Medicredit, Inc.*, the Fifth Circuit addressed FDCPA standing in the class-action context. 946 F.3d 762 (5th Cir. 2020). There, the plaintiff alleged that a collection agency sent her a collection letter threatening legal action without the actual intent to follow through on the threat. *Id.* at 765. The FDCPA prohibits debt collectors from threatening "to take any action . . . that is not intended to be taken." 15 U.S.C. § 1692e(5). Unfortunately, the parties in that case did not dispute the class representative's standing, and the legal challenge turned on whether the proposed class failed certification under Rule 23 of the Federal Rules of Civil Procedure. *See Flecha*, 946 F.3d at 768–69. Still, the Court's discussion is insightful. Namely, the Fifth Circuit observed that

---

[2] The Fifth Circuit also addressed Article III standing in *Sayles v. Advanced Recovery Systems, Inc.*, 865 F.3d 246 (5th Cir. 2017). That case involved section 1692e(8), which prohibits "[c]ommunicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." 15 U.S.C. § 1692e(8). There, the debt collector failed to indicate the plaintiff's debt as disputed in notice letters to creditors. *See Sayles*, 865 F.3d at 249–50. The district court found this injury to be both particularized and concrete, and the Fifth Circuit affirmed, explaining that the debt collector's conduct exposed the plaintiff to "a real risk of financial harm caused by an inaccurate credit rating." *Id.* at 250.

"there [were] undoubtedly many unnamed class members . . . who lack[ed] the requisite injury to establish Article III standing" because the putative class—all persons in Texas who received the same form debt-collection letter—"inevitably include[d] people who received the letter, but ignored it as junk mail or otherwise gave it no meaningful attention." *Id.* at 768.

Post-*Spokeo*, most courts across the country, including those in the Fifth Circuit, have found that an alleged FDCPA violation alone is sufficient to confer standing because it establishes that the consumer suffered the type of harm Congress intended to prevent—abusive debt collection practices. *See Smith v. Moss Law Firm, P.C.*, No. 18-2449, 2020 WL 584617, at *4 (N.D. Tex. Feb. 6, 2020) (collecting cases); *Busby v. Vacation Resorts Int'l*, No. H-18-4570, 2019 WL 669641, at *5 (S.D. Tex. Feb. 19, 2019) ("Most district courts in the Fifth Circuit have denied motions to dismiss based on insufficient allegations of injury in FDCPA cases. . . . These cases are consistent with decisions from other circuits holding that Article III standing may be based on an alleged FDCPA violation."). *See also Reed v. Receivable Recovery Servs., LLC*, No. 16-12666, 2017 WL 1399597, at *6 (E.D. La. Apr. 19, 2017) (finding Article III standing where plaintiff received collection letters allegedly in violation of the FDCPA). *But see Abercrombie v. Rogers, Carter & Payne, LLC*, No. 15-2214, 2016 WL 8201965, at *4–6 (W.D. La. Nov. 22, 2016) (finding no Article III injury for claim arising out of an alleged misstatement of debtor's rights under the FDCPA where plaintiff never alleged that he could suffer harm as a result of the alleged misstatement); *Thompson v. Hughes, Watters & Askanase, LLP*, No. 3:13-CV-0429-G BH, 2013 WL 4441979, at *9 (N.D. Tex. Aug. 20, 2013) (plaintiff's "sparse allegations" were subject to dismissal because the complaint did not explain how or why the complained-of language violated the FDCPA).

Although Mayfield's amended complaint certainly alleges that LTD's debt-collection letter violated the FDCPA, even under the *very* deferential injury-in-fact inquiry for FDCPA claims, this case toes the line. Distilled down to its irreducible

minimum, Mayfield alleges that: (1) he received a letter from LTD that offered to settle his debt for roughly half the amount owed if he selected one of LTD's two payment plans; (2) both payment plans required that he make his first (or only) payment by June 3, 2019; (3) he believed that the due date had to be met in order for LTD to accept either of the payment plans; (4) he tried to scrounge up the money but was unable to do so; and (5) he suffered emotional distress from being unable to take advantage of time-sensitive settlement offers. It is unremarkable that Mayfield would suffer anxiety over not being able to pay his bills. Which begs the question: Is this truly the type of harm the FDCPA was designed to prevent? *Cf. Sheriff v. Gillie*, 136 S. Ct. 1594, 1603 (2016) (Section "1692e bars debt collectors from deceiving or misleading consumers; it does not protect consumers from fearing the actual consequences of their debts").

Nevertheless, given the phalanx of authority on the issue, I am wary of drawing a line in the sand, particularly at the motion to dismiss stage. The FDCPA provides the right to receive truthful, non-misleading communications from a debt collector. Mayfield alleges LTD's collection letter violated this right because it contained false, deceptive, or misleading representations. Unlike the unnamed class members in *Fletcha*—some of whom the Fifth Circuit opined lacked standing because they did not suffer a cognizable injury—Mayfield did not ignore or fail to give the letter meaningful attention. *See Fletcha*, 946 F.3d at 768–69. Instead, Mayfield alleges that he took affirmative steps to gather the resources necessary to accept one of LTD's settlement offers.

If more is required—that is, if Mayfield is required to connect an "additional" concrete and particularized injury to the alleged FDCPA violation[5]—Mayfield alleges that LTD's collection letter caused him to suffer "emotional distress." *See*

5 The Fifth Circuit has not directly addressed whether Article III standing requires that a plaintiff bringing a claim under the FDCPA must allege to have suffered an injury "in addition" to the complained-of FDCPA violation. *See Ghanta v. Immediate Credit Recovery, Inc.*, No. 3:16-CV-00573-O, 2017 WL 1423597, at *3 (N.D. Tex. Apr. 18, 2017).

*Rideau v. Keller Indep. Sch. Dist.*, 819 F.3d 155, 169 (5th Cir. 2016) ("[E]motional harm satisfies the 'injury in fact' requirement of constitutional standing."). *See also Ben-Davies v. Blibaum & Assocs., P.A.*, 695 F. App'x 674, 676 (4th Cir. 2017) (holding, in the context of FDCPA claim, that emotional distress is a concrete injury sufficient to support Article III standing); *Kranz v. Midland Credit Mgmt.*, Inc., No. SA-18-CV-169-XR, 2020 WL 3899223, at *6 n.9 (W.D. Tex. July 10, 2020) (emotional distress and anxiety caused by communications that allegedly violated the FDCPA satisfied Article III's injury-in-fact requirement); *Smith*, 2020 WL 584617, at *5 ("legal costs, anxiety, and worry" caused by defendant's alleged FDCPA violation were concrete and particularized injuries for purposes of FDCPA claim (quotation omitted)); *Edeh v. Midland Credit Mgmt., Inc.*, 748 F. Supp. 2d 1030, 1041 (D. Minn. 2010) ("A consumer who has suffered emotional distress has suffered [actionable damage under the FDCPA] even if the emotional distress was not severe.").

Keeping in mind that courts are to construe the FDCPA broadly and in favor of the consumer and accepting as true Mayfield's well-pleaded allegations, I find that Mayfield has standing to bring his claims.

## B. ONE OF MAYFIELD'S CLAIMS IS PLAUSIBLE ON ITS FACE

### 1. Legal Standard

Rule 12(b)(6) allows parties to seek dismissal of a lawsuit for failure to state a claim upon which relief may be granted. A motion to dismiss under Rule 12(b)(6) tests the sufficiency of the complaint against the legal standard set forth in Rule 8, requiring "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp., v. Twombly*, 550 U.S. 544, 570 (2007)). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific

task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

When conducting its inquiry, the Court "accept[s] all well-pleaded facts as true and view[s] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club, Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation omitted). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S at 556 (quotation omitted). "[I]n deciding a motion to dismiss for failure to state a claim, courts must limit their inquiry to the facts stated in the complaint and the documents either attached to or incorporated in the complaint." *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017 (5th Cir. 1996).

Ultimately, a motion to dismiss under Rule 12(b)(6) "is viewed with disfavor and is rarely granted," *Harrington v. State Farm & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009) (quotation omitted), particularly where the complaint alleges a collection letter is confusing or misleading under the FDCPA. *See Fiddick v. Bay Area Credit Serv., LLC*, No. 3:18-CV-00416, 2019 WL 1858824, at *3 (S.D. Tex. Apr. 25, 2019).

**2. Analysis**

Congress enacted the FDCPA in response to "abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors"—practices that "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress "clearly intended the FDCPA to have a broad remedial scope." *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002). "The FDCPA should therefore be construed broadly and in favor of the consumer." *Daugherty v. Convergent Outsourcing, Inc.*, 836 F.3d 507, 511 (5th Cir. 2016). Nevertheless, I must remember that while the FDCPA "bars debt collectors from deceiving or misleading consumers[,] it does not protect

consumers from fearing the actual consequences of their debts." *Sheriff*, 136 S. Ct. at 1603.

Section 1692e provides a non-exhaustive list of unlawful practices, including "[t]he false representation of . . . the character, amount, or legal status of any debt," and "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. § 1692e(2)(A), (10). Mayfield asserts claims for relief under each of these statutory provisions.

In the Fifth Circuit, a district court must evaluate any potential deception in LTD's collection letter from the perspective of an "unsophisticated" or the "least sophisticated" consumer. *McMurray v. Procollect, Inc.*, 687 F.3d 665, 669 (5th Cir. 2012). For ease of reference, I refer to both standards as "unsophisticated." *See Manuel v. Merchants & Pro. Bureau, Inc.*, 956 F.3d 822, 826 n.10 (5th Cir. 2020) (explaining that the Fifth Circuit refers to the unsophisticated-consumer and least-sophisticated-consumer standards interchangeably). In making this determination, I "must assume that the plaintiff-debtor is neither shrewd nor experienced in dealing with creditors." *Goswami v. Am. Collections Enter., Inc.*, 377 F.3d 488, 495 (5th Cir. 2004). At the same time, I must "not consider the debtor as tied to the very last rung on the intelligence or sophistication ladder." *Id.* (cleaned up). *See also Osborn v. Ekpsz, LLC*, 821 F. Supp. 2d 859, 867 (S.D. Tex. 2001) ("The unsophisticated consumer isn't a dimwit. She may be uninformed, naive, and trusting, but she has rudimentary knowledge about the financial world and is capable of making basic logical deductions and inferences." (quotation omitted)). When determining whether a collection letter violates the FDCPA, I must read the letter as a whole. *See Peter v. GC Servs. L.P.*, 310 F.3d 344, 349 (5th Cir. 2002).

The unsophisticated consumer standard is an objective test, "meaning that it is unimportant whether the individual who actually received an allegedly violative letter was misled or deceived." *Gomez v. Niemann & Heyer, LLP*, No.

1:16-CV-119 RP, 2016 WL 3562148, at *4 (W.D. Tex. June 24, 2016). The objective "standard serves the dual purpose of protecting all consumers, including the inexperienced, the untrained[,] and the credulous, from deceptive debt collection practices and protecting debt collectors against liability for bizarre or idiosyncratic consumer interpretations of collection materials." *Taylor v. Perrin, Landry, deLaunay & Durand*, 103 F.3d 1232, 1236 (5th Cir. 1997).

"It is well-settled in the Fifth Circuit that FDCPA complaints alleging a collection letter is confusing or misleading are rarely dismissed at the Rule 12(b)(6) stage. This is because the inquiry under Sections 1692e . . . requires a fact-bound determination of how an unsophisticated consumer would perceive a collection letter." *Fiddick*, 2019 WL 1858824, at *3 (collecting cases). "[B]ecause district judges are not good proxies for the unsophisticated consumer whose interests the FDCPA protects, district courts should be hesitant to dismiss § 1692e . . . claims." *Carter v. First Nat. Collection Bureau, Inc.*, 135 F. Supp. 3d 565, 569 (S.D. Tex. 2015) (quotation omitted). "Dismissal is appropriate only when it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by it." *Daugherty*, 836 F.3d at 512 (cleaned up).

I now turn to the First Amended Complaint. Mayfield alleges that LTD's letter contains two misleading phrases: (1) "we are not obligated to renew this offer"; and (2) "selecting a repayment option and payment by the due date will settle this debt in full with the current creditor." I find that the fist phrase is not misleading. The second phrase, however, is arguably misleading in one respect.

*a. "We are not obligated to renew this offer"*

Mayfield contends that the phrase "we are not obligated to renew this offer" violates section 1692e because it:

(1) "[E]mphasizes and amplifies the creditor's message that it is a time-limited offer"; and

(2) "[R]einforces the idea that if the debtor does not act immediately, she may lose the opportunity to do so forever."

Dkt. 22 at 4 (quoting *Preston v. Midland Credit Mgmt., Inc.*, 948 F.3d 772, 788 (7th Cir. 2020) (Rovner, J., concurring)). These arguments fail.

Nearly every court to address time-sensitive or limited-duration settlement offers has found no FDCPA violation absent an express statement that no other settlement offer will be made.[6] In this Circuit, however, the law governing the issue is unsettled. The leading Fifth Circuit case addressing temporal settlement offers by debt collectors held the following language was deceptive and in violation of the FDCPA: "Effective immediately, and only during the next thirty days, will our client agree to settle your outstanding balance due with a thirty percent (30%) discount

[6] *See Preston*, 948 F.3d at 785 (holding that the inclusion of the sentence "We are not obligated to renew any offers provided" at the conclusion of a collection letter "cured any misimpression that an unsophisticated consumer might have formed concerning the meaning of the settlement offers"); *Evory v. RJM Acquisitions Funding L.L.C.*, 505 F.3d 769, 776 (7th Cir. 2007) (explaining that the phrase "we are not obligated to renew this offer" sufficiently informs the unsophisticated consumer that there is a renewal possibility but that it is not assured); *Fleurisst v. Mercantile Adjustment Bureau LLC*, No. 20-CV-61102-RUIZ/STRAUSS, 2021 U.S. Dist. LEXIS 155288, at *21 (S.D. Fla. Aug. 16, 2021) ("Defendant merely stated that the offer 'may' expire and that Defendant was not obligated to renew the offer. It would be unreasonable for even the least-sophisticated consumer to infer from these statements that the offer would definitively expire or that Defendant would not be permitted to renew the offer."); *Saraci v. Cap. Mgmt. Servs., L.P.*, No. 1:18-CV-05149 (AMD) (RER), 2019 WL 4602827, at *2 (E.D.N.Y. Sept. 23, 2019) (similar language "satisfie[d] the 'least sophisticated consumer' standard, for nothing in the letter suggests that the offer is a one-time deal"); *Manning v. Elevate Recoveries*, No. 4:16-CV-942-ALM-CAN, 2017 WL 5586674, at *5 (E.D. Tex. Oct. 16, 2017) (finding that a collection letter concluding with the same sentence as LTD's letter—"We are not obligated to renew this offer"—was neither deceptive nor misleading); *Waters v. J.C. Christensen & Assocs., Inc.*, No. 08-11795-NG, 2011 WL 1344452, at *9 (D. Mass. Mar. 4, 2011) ("Not only would the least sophisticated debtor understand that the expiration of a mere offer does not necessarily foreclose the possibility of the parties later agreeing to its terms, but the practical consequence of holding offer letters unlawful would be to prohibit settlement offers that are anything but the debt collector's best and final offer." (cleaned up) (quoting *Johnson v. AMO Recoveries*, 427 F. Supp. 2d 953, 957 (N.D. Cal. 2005))); *Gully v. Van Ru Credit Corp.*, 381 F. Supp. 2d 766, 772 (N.D. Ill. 2005) (concluding that "a settlement offer that states the proposed discount and the length of the offer, but does not expressly nor implicitly indicate that no other offer will be made, passes muster" under the FDCPA); *King v. Arrow Fin. Servs., LLC*, No. Civ.A.02-867, 2003 WL 21780973, at *3 (E.D. Pa. July 31, 2003) ("The inclusion of a deadline for acceptance of the settlement is merely a term of the settlement offer, and the least sophisticated consumer would interpret it as such.").

off your above balance owed." *Goswami*, 377 F.3d at 492. The Court began its analysis by highlighting that the statement itself was false. "In actual fact, [the creditor] had authorized [the debt collector] to give debtors such as [the plaintiff] a 30% discount at *any time*, not just for a period of thirty days." *Id.* at 495. Thus, the Court was persuaded that the statement suggesting the offer was a "one-time, take-it-or-leave-it offer that would expire in thirty days" was untrue and intended to push the plaintiff "to make a rapid payment to take advantage of the purported limited time offer." *Id.* Crucially, the Court explained its decision was based on the debt collector's "false or misleading statements" about its settlement authority "both in the discount it was authorized to offer and the time within which [the plaintiff] was allowed to accept the offer." *Id.* at 496.

LTD's offer letter suffers neither of these infirmities. Indeed, unlike the one-time offer in *Goswami*, LTD's letter does not give the impression that its offers would irrevocably lapse. Several district courts have recognized this distinction and limited *Goswami*'s holding to collection letters that contain objectively false information or expressly state that an opportunity to settle the debt at a discount will be lost after a given date.[7] I agree with this interpretation. There is a difference

[7] *See, e.g.*, *Bass v. Portfolio Recovery Assocs., LLC*, No. 17-CV-08345, 2018 WL 4005199, at *1–2 (N.D. Ill. Aug. 22, 2018) (finding collection letters that, for purposes of this analysis, are equivalent to LTD's letter—i.e., payment plans, a date by which payment "must be received," and a warning that the creditor is "not obligated to renew this offer"—were distinguishable from *Goswami* because the letters were neither false nor misleading); *Smith v. Nat'l Enter. Sys., Inc.*, No. CIV-15-451-D, 2017 WL 1194494, at *4–5 (W.D. Okla. Mar. 30, 2017) (finding *Goswami* unpersuasive where defendant's "limited-time offer" did not imply that it was the plaintiff's only opportunity to settle or misrepresent the defendant's settlement authority); *Pescatrice v. Nat'l Action Fin. Servs., Inc.*, No. 05-61110-CIV, 2006 WL 8432179, at *7 (S.D. Fla. Oct. 18, 2006) (letter "simply informed Plaintiff the amount of money it was willing to accept within a particular time period and did not suggest that other settlement offers would not be forthcoming"); *Kiliszek v. Nelson, Watson, & Assocs., LLC*, No. 3:04CV2604, 2006 WL 335788, at *6 (M.D. Pa. Feb. 14, 2006) (letter did not provide that the discount would be available "only in the next thirty days," but rather "explained that to accept the specific offer presented in the letter, [the plaintiff] had to ensure that [the defendant] received the money by the deadline"); *Hernandez v. AFNI, Inc.*, 428 F. Supp. 2d 776, 780 (N.D. Ill. 2006) (the "letters in the instant case indicated that the current offer—'this offer'—was available for

between a "one-time, take-it-or-leave-it" offer, as in *Goswami*, and a limited-duration offer advising that the current offer is subject to expiration without suggesting that other settlement offers would not be forthcoming. Accordingly, I find that *Goswami* is not controlling in this instance and that LTD's letter sufficiently informs the unsophisticated consumer that LTD might renew its offers but that renewal is not assured. Stated simply, "it is apparent from a reading of the letter that not even a significant fraction of the population would be misled by" the phrase "we are not obligated to renew this offer." *Daugherty*, 836 F.3d at 512 (quotation omitted). Accordingly, no claim may proceed based on this phrase.

*b. "selecting a repayment option and payment by the due date will settle this debt in full with the current creditor"*

Mayfield argues that the phrase "selecting a repayment option and payment by the due date will settle this debt in full with the current creditor" is misleading for several reasons. First, he focuses on the potential ramifications if he settled the debt as offered. Specifically, he argues:

(1) A settlement for anything less than full value would not result in the outstanding balance being written off by the "current creditor";

(2) The debt-collection letter did not explain whether a settlement for less than the full value of the Subject Debt would fully resolve the remaining portion of the Subject Debt;

---

a limited time only, and contained no language that would suggest to a reasonable debtor that this was the final offer"); *Callanta v. GC Servs.*, No. C-05-5445 PJH, 2006 WL 1072028, at *3 (N.D. Cal. Apr. 21, 2006) (finding limited-duration offer distinguishable from *Goswami*'s "take-it-or-leave-it" language); *Johnson*, 427 F. Supp. 2d at 956 (explaining there is a distinction between a collector's letter making a one-time offer, as in *Goswami*, and a letter stating that the current offer is subject to expiration without indicating anything about the possibility of future offers); *Gully*, 381 F. Supp. 2d at 772 (finding no FDCPA violation because the letter "did not state that [the defendant] was authorized to settle 'only' for 40 per cent until the specific dates mentioned, which would have injected an artificial sense of finality into the offer"). *But see Prophet v. Myers*, 645 F. Supp. 2d 614, 619–20 (S.D. Tex. 2008) (determining that, "in light of the lack of controlling authority on the issue," the question of whether a collection letter requiring payment "within 30 days of the date of this letter" was deceptive under the FDCPA "cannot—and should not—be resolved on a motion to dismiss").

(3) The objected-to phrase was reasonably and plausibly interpreted by Mayfield to suggest that his payment of the proposed amount would be reported to a credit reporting agency; and

(4) A settlement for less than the full value of the Subject Debt cannot be lawfully documented or reported as a settlement of the "debt in full."

*See* Dkt. 22. at 5. *See also id.* at 20 ("This statement is confusing, false[,] and misleading, because as a matter of law, *settling a debt for less than the amount owed* I [sic] cannot constitute *a settlement of the debt in full*. While [LTD] may have wanted to entice [Mayfield] into paying the Subject Debt by offering a discounted payment amount as the carrot—so to speak—it was confusing, false[,] and misleading for [LTD] to use this carrot where the time-sensitive reduced payment amount would not have constituted a so-called settlement in full." (citation omitted)).

I find that these arguments miss the mark. There is nothing in the letter regarding credit reporting, nor is there any way to interpret it as insinuating that any settlement would be reported to a credit reporting agency, much less that it would be reported "as a settlement of the 'debt in full.'" *See id.* at 22. To the extent that Mayfield argues that "*settling a debt for less than the amount owed* I [sic] cannot constitute *a settlement of the debt in full*," *see id.* at 20, Mayfield has failed to cite, and the Court is not aware of, any authority supporting such proposition.

Finally, Mayfield argues the same phrase is misleading "because a settlement for less than the full value of the Subject Debt could result in a subsequent sale of the debt to a debt purchaser where the debt purchaser could plausibly have demanded the remaining amount of the Subject Debt." *Id.* at 5. Mayfield's justification for this interpretation is the letter's use of the term "current creditor," which he argues an unsophisticated consumer could view as "legal jargon" meant "to limit . . . how partial payment will be viewed by the then[-]current creditor." *Id.* at 24–25. This argument has merit.

LTD's collection letter provides: "Acceptance of this settlement offer, selecting a repayment option and payment plan by the due date will settle this debt in full with the *current creditor*." Dkt. 17-1 at 1 (emphasis added). Mayfield argues the term "current creditor" could lead an unsophisticated consumer to believe "settlement for less than the full value of the Subject Debt [with the current creditor] could result in a subsequent sale of the debt to a debt purchaser [who] could plausibly [demand] payment for the remaining amount of the Subject Debt." Dkt. 14 at 7.

As mentioned earlier, I am required to read LTD's collection letter as a whole to determine whether it violates the FDCPA. Although the body of LTD's letter uses the term "current creditor," in the top left-hand corner, the letter reads: "CREDITOR: FIRST SAVINGS CREDIT CARD." Dkt. 17-1 at 1. Against this backdrop, Mayfield's argument is that the term "current creditor" implies there could be other future creditors—i.e., Mayfield's payment would only settle his "debt in full" with First Savings. For its part, LTD emphasizes that there is no portion remaining for which a future creditor could attempt to collect if the account is settled "in full."

While I have my reservations that Mayfield's construction manipulates what was a good-faith attempt to negotiate a lesser payment into an accusation of mistreatment, his interpretation is not outside the realm of what an unsophisticated consumer would understand when faced with the term "current creditor."

I am aware that in certain instances debt-collection letters must identify the "original creditor" if different from the "current creditor," *see* 15 U.S.C. § 1692g(a)(5), and that, in such a situation, the letter must also identify "the creditor to whom the debt is owed"—i.e., the current creditor. *See id.* § 1692g(a)(2). But First Savings is the only creditor to whom Mayfield owes a debt. Thus, in this case, the qualifier "current" could lead an unsophisticated consumer to believe that there may be future creditors. *See Gonzales*, 660 F.3d at 1062 ("[A] debt collection

letter is deceptive where it can be reasonably read to have two or more different meanings, one of which is inaccurate." (quoting *Brown*, 464 F.3d at 455)). *Cf. Anderson v. Ray Klein, Inc.*, No. 18-11389, 2019 WL 1568399, at *2 (E.D. Mich. Apr. 10, 2019) ("The word 'original,' while making clear the ultimate source of the debt, also suggests that there may be a non-original creditor."); *Kirkpatrick v. TJ Servs.*, 379 F. Supp. 3d 539, 542 (E.D. Va. 2019) (finding that a debt-collection letter that identified the "Original Creditor" without specifying it was also the "current creditor" implied that "some other entity currently owns the debt").[8]

****

In sum, I find that the phrase "we are not obligated to renew this offer" is not misleading to support Mayfield's FDCPA claim. However, I find that the phrase "selecting a repayment option and payment by the due date will settle this debt in full with the current creditor" is not so clear that it may be deemed FDCPA-compliant as a matter of law.

## CONCLUSION

For the reasons stated above, LTD's motion to dismiss is **DENIED**.

Signed on this 30th day of September 2021.

ANDREW M. EDISON
UNITED STATES MAGISTRATE JUDGE

[8] Had LTD's letter used the descriptor "creditor" rather than "current creditor," even the least sophisticated consumer could not have been "misled" to believe that a subsequent debt purchaser could demand payment of the remaining balance.